BYRD *against* TUCKER.

ERROR *to Pulaski Circuit Court.*

He who excepts to an opinion of the Court, must reserve his points at that time, and the bill of exceptions must state that the transaction occurred during the progress of the trial.

But the bill needs not be signed while the trial is progressing, but may be signed after judgment, and during the same term; and where the Judge certifies that the party excepted at the trial, and the bill of exceptions sets out the whole matter as it transpired at .the trial, it is sufficient.

Where the defendant pleaded, as offset, a note assigned to him against the ·plaintiff, and the plaintiff replied that the note was assigned after suit commenced, and writ served, with a traverse that it was assigned before; and ` the defendant rejoined, that it·was assigned before, with a traverse that it was assigned afterwards, to which there was issue: *Held,* that the *onus probandi* rested on the plaintiff, and it devolved on him to prove that the note was assigned after suit brought and writ served.

The assignment itself is prima facie `evidence that it was made on the day it purports to have been made; and under such issue, it was only necessary for the defendant to produce the note and assignment.

.This was an action of debt. Tucker sued Byrd on a bond for one hundred and fifteen dollars. Byrd pleaded *nil debet,* and a second plea of set-off, upon two notes; one for $105, given by Tucker to S. S. Sanger, and by Sanger endorsed to Byrd, on the 12th of December, 1840; and one for $37 50 cents, given by Tucker to R. C. Byrd, and by R. C. Byrd endorsed to the defendant, W. J. Byrd, on the 12th of December, 1840. The writ in the case issued on the 25th of January, 1841, and served on the 26th.

The plaintiff demurred to the plea of set-off, on the ground that the small note was not within the jurisdiction of the Court, and the Court could in no way adjudicate upon it; and joined issue to the plea of *nil debet.* His demurrer was overruled, and he replied to the plea of off-set, that the two notes mentioned in it were assigned to the defendant after suit commenced and writ served; without this, that they were assigned before suit commenced or writ served; concluding with a verification. He further replied, that he did not owe the money claimed in the plea of set-off, or any part of it. To this second replication, the defendant joined issue. To the first, he rejoined, that the notes were assigned before suit commenced and writ served; without

this, that they were assigned afterwards; concluding to the country. On the trial, the defendant offered in evidence, as a bill of exceptions states, a note executed to Sanger, of the date, for the amount, and of the tenor set out in the plea, but endorsed " Pay to W. J. Byrd, Dec. 12, 1840; Sept. 20, 1840." The plaintiff objected to its introduction, on account of the variance, in the statement in the plea, of the date of the assignment. The objection was sustained. The defendant then struck out the words and figures " Sept. 20th, 1840," from the assignment, and then " offered in off set the note and endorsement," which the Court refused to receive as evidence of a set-off. The defendant then withdrew the small note; and the Court gave judgment against the defendant for the amount of the note sued on, and interest. No evidence was given on either side, except the note sued on, and those offered to prove the set-off. The trial was had, and judgment rendered, on the first day of April, 1841; and the facts as to the evidence offered, and the decisions thereon, were stated in a bill of exceptions, filed on the second day of April. There was no showing on the record, or in the bill of exceptions, that the points were saved while the trial was proceeding, unless that was shown by the expression in the bill of exceptions, three times repeated, " the defendant excepted, and hereby excepts."

HEMPSTEAD and JOHNSON, for the plaintiff:

The first error is, that the Court ruled that there was a variance and misdescription in the note for one hundred and five dollars, offered by the defendant below to sustain his plea of set-off.

*Second.* That the Court refused to receive the said note, and assignment thereon, to support the plea of *set-off,* after the words and figures "*Sept.* 20*th,* 1840," were stricken out and erased.

*Third.* The Court permitted the due-bill for *thirty-seven dollars and fifty cents* to be withdrawn, after it had gone to the Court, sitting as a jury.

The plea of *set-off* is nothing more than a *cross action;* and no greater certainty is required, than would be in a declaration upon an assigned promissory note.

Byrd *against* Tucker.

The question, then, is, whether the date of an assignment is material in a declaration, to enable the plaintiff to recover?

A reference to the forms of pleadings, shows that an assignment needs not be dated; and, if dated, that it needs not be averred or proved at the trial. See forms in 2 *Chitty's Pleading;* 1 *Harris' Modern Entries;* 1 *Chitty's Precedents.*

The plaintiff, in showing title, is not bound to set out any more than will enable him to recover. There is not a solitary decision which lays down any doctrine, in contravention of the forms referred to; in none of which, is the date of an assignment pleaded as material. The reason is, that the title of the assignee is as perfect by an endorsement or assignment in blank, without any date, as with it. If there is a date, it is surplusage, and may be stricken out, before or at the trial, which of course could not be done, if it was at all material.

The plea of *set-off* describes the note correctly, and the date of the assignment to the plaintiff in error, by the payee, is set out under a *videlicet,* on the 12th day of December, A. D. 1840.

The date is no part of the description of the assigned note. If the assignment was made subsequent to the commencement of the suit, the plaintiff below could only avail himself of that fact in a replication, properly setting it up. This was done, and issue taken; and the only proof required to sustain the matter in the plea, was, that the assignment was previous to the suit.

If a declaration merely state that a promissory note was made such a day, though it bear date a different day, the variance will not be fatal. 2 *Camp.,* 307; *Pasmore vs. North,* 13 *East.,* 516; *Purcell vs. Macnamara,* 9 *East.,* 157.

If the endorsement be dated on a different day to the date of the bill, state the day accordingly; but even this is not necessary. 2 *Ch. Pl.,* 152, *note* (12). Mode of stating endorsement:—"And the said C. F. then and there endorsed and delivered the said last mentioned bill of exchange to G. H., who then and there endorsed and delivered the same bill to the said plaintiff." 2 *Chitty,* 154.

The date or time of endorsement or assignment is not material; and in the case of *Reynolds vs. Beering,* 4 *Doug. Rep.,* 189, it was decided that "a note or bill endorsed *even after the action brought, may be set-*

*off*, except where the endorsement is merely colorable and collusive between the endorser and the defendant, in order to defeat the plaintiff's demand."

This is a full endorsement. A full and blank endorsement are stated in the same manner, the legal effect of both being the same. *Lawes on Pleading, Marg., p.* 346.

The statute law of the State requires that a blank assignment shall be taken most for the benefit of the defendant. The plaintiff below occupied, with respect to the plea of set-off, the attitude of a defendant. Clearly, the 12th of December, 1840, would be more to his advantage than the 20th of the previous September; because there might have been dealings between the obligor and payee, between the first and second period, that might be set up against the assignee by the original obligor.

Both dates were previous to the institution of the suit; and it is humbly conceived that a more technical objection was never sustained in a Court of justice; not technical merely, but without the shadow of foundation, either in common sense, common law, or statute law. Besides, the objection was a captious one—the last resort of a drowning man catching at straws.

The Court ought to make any intendment against a mere captious objection. 1 *T. R.*, 117. Supposing the assignment would admit of two intendments, that shall be preferred which shall support the pleading. 6 *T. R.*, 134. How the Court came to the conclusion that the assignment was made on the 20th of September, (supposing the date to be material), is utterly incomprehensible; because there was a date that accorded with the plea, and all that can be said is, that more was in the endorsement than plea.

Besides, before the note actually went to the Court sitting as a jury, objection was made, and the objection sustained. The words "Sept. 20th" were immediately stricken out, in open Court, which made it exactly conform to the plea. It was immediately re-offered, and the Court refused to receive it.

Undoubtedly, each party has exclusive control over his own testimony until it has actually gone to the jury. This is like a case of incompetency in a witness: objection being sustained, his incompetency

can be removed by release; and the Court cannot again exclude him, or legally prevent him from testifyng. This is the constant practice, settled beyond dispute. The Court erred in permitting the smaller note to be withdrawn. It had actually gone to the Court, as a jury, and could not be withdrawn.

Our statute of *set-off*, intended to provide for the settlement of transactions between parties without driving them to a circuity of action; but in vain has it been attempted, if such technicalities are to be countenanced. 4 *Douglass*, 181; 9 *East.*, 157.

PIKE, *Contra:*

The first question presented by the record is, whether the bill of exceptions was properly taken, so as to have become a part of the record. Clearly it was not. The record does not notice its filing. It is not shown that the defendant saved his points at the trial, and had leave to file his bill of exceptions the next day, or that it was filed by consent. And under the former decisions of this Court, it cannot be considered a part of the record.

If, however, the Court should look upon it as a part of the record, then other questions will arise. Protesting against the bill of exceptions being considered at all, we proceed to consider those questions.

First, the plaintiff in error alleges that the Court erred in rejecting his note of $105, when first offered in evidence. The principal issue, which he was attempting to support, was, that the note was, in fact, assigned before the suit was commenced. That fact he had to prove by competent testimony. The assignor would have been a competent witness to prove that fact. *Spring vs. Lovett,* 11 *Pick.*, 417. By the issue, as made up, the affirmative devolved on the defendant. He had rejoined to the plaintiff's traverse, that the notes were assigned before suit brought. He had alleged that the note was assigned on the 12th of December, 1840; and he produced a note endorsed— " Pay W. J. Byrd, 12th Dec., 1840—20th Sept., 1840." Clearly this was a variance. Which was the true date of the endorsement? Both could not be. It seems more like a direction, by Sanger, to pay the note on the 12th of December. We, therefore, think, that there was a variance.

Whether there was or not, the first thing which it devolved on the defendant to prove was the fact, that the endorsement was actually made before suit commenced. Until he proved this fact, he could not be allowed to read the note in evidence. It was no evidence against Tucker, unless it was assigned before suit commenced. He could not have read it to a jury even, until that fact was proven. The two issues, united, devolved upon him the necessity of producing such a note as was stated in his plea, the date of the assignment of which, if date it bore, should be the 12th of December, and of proving that such note was, in fact, assigned on that day, or before the institution of the suit. No note could be evidence for him, unless it answered the description, and had been assigned before suit commenced. The true date of the assignment proven, the note was good evidence against Tucker: until then, it was no evidence at all, as he could only charge Tucker by means of such a note, assigned before a certain date. To produce the note merely, was to produce no evidence. This preliminary proof he never offered to make. A deed is no evidence, unless duly recorded. Can you read the deed in evidence first, and afterwards proceed to establish that it was recorded? An award not made by a certain day, is in a particular case not valid. Could you first read the award in evidence, and afterwards prove when it was made?

When the note was first offered in evidence to the Court, it was not only offered without any such evidence, without making any attempt to lay a foundation for introducing it, by first proving the actual date of the assignment, but, in place of a note even purporting to have been assigned on the 12th of December, a note was offered with a double date to the assignment. After offering this note, he offered in evidence the smaller note, and there seems to have rested. The record then states, that the plaintiff moved to *exclude* the first note, for misdescription; and that the Court sustained the motion, and refused to allow it to be received as a set-off. It was again "*offered in offset,*" and the Court again refused to receive it as evidence of a set-off.

The record is improperly made up, and the motion first made was incorrect in form. A party cannot move the Court, when sitting as a

jury, to *exclude* testimony; but, if it has been read, merely to *disregard* it.

When a jury is trying a cause, there are three stages in the process under which facts are ascertained. First, a party may object to a piece of evidence being read (or detailed) to the jury; and the judge is then called on to decide whether the evidence offered *conduces* to prove the facts to be ascertained: that is, whether it is or is not relevant. In deciding this question, the Court gives no judgment as to the weight of the testimony.

The second, is that by which the *weight* of evidence is determined: that is, *how far* it conduces to prove the facts to be ascertained. This is for the jury.

The third, is the stage at which the judge declares to the jury, that, if certain facts are ascertained, the law is so and so, upon those facts.

In the first place, the Court is to decide whether evidence shall be read to the jury at all. The motion then is, properly, to exclude. But, when the Court sits as a jury, no such motion can be made. The Court then unites in itself all the functions of judge and jury. It cannot be asked to prevent testimony from being read to itself; and, when read, the only question is, whether the Court will or will not disregard it. If there is a variance, it must disregard it absolutely, because no additional testimony can cure that fault; but, if it is relevant, but merely insufficient, or, if it constitutes no proof, until some preliminary fact is proved, then the proper decision is, that it will be disregarded, unless such additional facts are proved.

Such must be taken to have been the decision of the Court in the present case. The parties were bound to have offered all their evidence to the Court. When offered, the Court would then judge of its sufficiency. They offered the two notes, and made no effort to introduce further proof. Whether the Court was right or not, in first refusing to consider the note, on the ground of variance, is a matter of no importance. The second date being stricken out, the note was offered again; and, if the Court *then* decided properly, its first decision made no difference. The Court refused to receive it as evidence of set-off. On what ground does not appear. They did not inform the defendant that further proof was necessary. They were not bound to

58

do so. It was his duty to make out his case at once. If they were bound to do so, it was not necessary to show, on the record, that they did so. The note certainly was no evidence of offset, because no proof was offered as to the date of its assignment. The decision must, therefore, be regarded as having been made upon the *sufficiency*, and not on the *relevancy* of evidence, and therefore, in any event, was correct; that is, it is correct, whether the proof as to the date of the assignment was, in its nature preliminary, or merely additional.

It would be doing great injustice to an inferior tribunal, to permit a party to submit his case to the Court, without the intervention of a jury; and, by presenting a portion, only, of his testimony, procure a decision which, though correct in its general result, and on all the evidence offered, is, still, in the mere letter, not strictly technical or formal; and then reverse that decision, which might and would have been different, if he had produced all the testimony which the issues, on his part, required.

We have assumed that it was necessary for the defendant, by evidence *aliunde*, to prove the date of the assignment. That point, we apprehend, it is not necessary to argue. Another question arises on this record, of which the defendant in error claims the benefit. He demurred to the plea of offset, because it set up a note for less than one hundred dollars, and required the Court to adjudicate upon it.

According to the decision of this Court, in the case of *Berry vs. Linton*, each note is the amount in controversy. This small note is exclusively cognizable before a justice of the peace; and being without the jurisdiction of the Circuit Court, it could, neither by declaration nor plea, obtain jurisdiction of the subject matter. If it can, then the jurisdiction as to that note is concurrent with that of justices of the peace. The plaintiff had a vested right, by the constitution, to be sued on that note before a justice of the peace. To bring it into the Circuit Court, to be there adjudicated, is to commit a fraud on the constitution.

HEMPSTEAD, in reply:

The gentleman says, that the bill of exceptions is no part of the record, and makes a general reference to the decisions of this Court

Byrd *against* Tucker.

to sustain the position.    The object of a bill of exceptions is, to pre-
serve the evidence of facts, which, in the ordinary course of proceed-
ing in the Courts, would not otherwise appear of record.    When signed
by the judge in the capacity of a Court, it is, emphatically, a part of
the record, and, as such, is entitled to faith and credit.    If a bill of
exceptions is reduced to form, and signed by the judge or judges pre-
siding during the term, it becomes a part of the record, and no objec-
tion can be taken.    A term of Court is considered as but one day in
law; and hence it is, that a bill of exceptions, signed at any time du-
ring the term, is deemed to be signed while the cause is before the
Court, and while the Court possesses full and entire control over it.

The process and pleadings may be amended, judgment arrested,
a new trial granted,—which show that the Court have full control over
a cause at the term at which trial was had; and it is apprehended
that it is not necessary to cite authority to sustain so plain a position.

In the case of *Medberry against Collins et al.*, 9 *Johns. Rep.*, 345,
an alternative mandamus has been issued, commanding the judges
and assistant justices of the Court of Common Pleas of Chenango
county, to sign and seal a bill of exceptions, &c.    One of the judges
signed the bill of exceptions, and two of them made a separate return
under their hands and seals.    On reading the return, a motion was
made for a peremptory mandamus: *per curiam*, "The fact stated in
the return of the two judges, that the bill of exceptions was not ten-
dered at the trial, but presented to the judges, individually, after the
term had ended, is sufficient cause for denying the present motion.
The facts attending a trial are extremely liable to be mistaken or
forgotten, if they are not reduced to writing at the time, and presented
distinctly to the Court during the continuance of the term.    As this
bill was not tendered until the subsequent vacation, we will not now
award process to compel the judges to sign it.    The reasons upon
which the Court refused to grant a like motion in the case of *Sikes vs.
Ransom*, 6 *Johns. Rep.*, 279, apply to this case."    In this latter case,
it is laid down, that a bill of exceptions ought to be tendered at the
trial, though the practice is to allow the counsel to tender it afterwards.
1 *Bos. & Pull.*, 32.    According to the decision in *Wright & Sharp*,
1 *Salk.*, 288, the Courts are not bound to seal a bill of exceptions

tendered at the succeeding term of the Court. For, as Lord HOLT observed, "if this practice should prevail, the judge would be in a strange condition. He forgets the exceptions, and refuses to sign the bill: so an action must be brought." The counsel should have attended to the bill, and have seen that it was correct at the January term.

It would be a dangerous precedent to take compulsory measures against judges, and make them answer, at their peril, to a statement of facts, tendered to them at a subsequent term.

In the case of *Clark against Dutcher*, 19 *Johns. Rep.*, 246, a motion was made to quash a writ of error and bill of exceptions. It appeared that the bill of exceptions had been presented to the judges of the Court of C. P. individually, out of the Court, and was signed and sealed by them separately, and without any notice to the opposite party of the time of its being so signed. *Per curiam*—The bill of exceptions in this case is irregular. The exceptions should be settled by all the judges sitting together as a Court. Separately or individually, they cannot act judicially, or as a Court. Though a bill of exceptions may be signed after trial, or after the Court has adjourned, it should be by all the judges acting together as a Court. In a similar case, at the last term, we ordered the bill of exceptions to be sent back to the Court of Common Pleas, that the judges might consider of it and sign it while together."

These cases do nothing more, in fact, than declare what the general practice is, as derived from the common law.

In the case of *Gardner vs. Baillie*, 1 *Bos. & Pull.*, 22, it is said, *per curiam*, that a bill of exceptions is no part of the record, till after judgment. If it were, the Court ought to take it into consideration before judgment, which is never done. The bill of exceptions is carried into a Court of error, and there annexed to the record. Being for the benefit of the party who tenders it, and remaining in his possession, it is in his breast to employ it or not. Regularly, it ought to be tendered at the time of trial, and sealed by the judge, in Court; and though the practice is, to allow the counsel to tender it afterwards, and some expense may arise to the parties before it is settled, yet this is not a regular course of proceedings upon which costs can be incurred.

The decision in the case of *Lyon vs. Evans, et al.,* 1 *Ark. Rep.,* 361, cannot, it is apprehended, be carried further than the decisions referred to; and, that the same principle was intended to be established. Our statute law only contains general provisions respecting bills of exception. *Rev. Stat., C.,* 116, *Sec.* 106, 107, 108, *and* 109.

As to proving an assignment, a party is not required to do so, unless there is a plea, supported by affidavit, denying the assignment, and stating that the assignment or assignments on such instrument were forged. *Rev. Stat., (title Assignment,) sec.* 4, *p.* 107. The only answer which needs be made to this part of the gentleman's argument, is, that no such plea, supported by affidavit, appears in the record.

The only issue was, whether the assignment was made before or after the institution of the suit. Whether the note was assigned on the 29th of September, 1840, or on the 12th of December following, both dates were before the commencement of suit. So that the production of the assignment supported the issue.

LACY, J., delivered the opinion of the Court:

A preliminary question has been raised and discussed at the bar, which we will notice before we proceed to determine the main point in controversy. It has been said, in behalf of the defendant in error, that there is no bill of exceptions in the record. It is true, as argued, that he who excepts to the opinion of the Court below, must reserve his points at that time, and the bill of exceptions must state that the transaction occurred during the progress of the trial. The bill needs not be signed while the trial is progressing, but it may be signed after judgment, and during the continuance of the term at which the trial was had. In the present instance, the Judge certifies that the plaintiff in error excepted to the points that were ruled against him upon the trial; and the bill of exceptions sets out the evidence that was offered and rejected by the Court. This clearly shows that the bill of exceptions was properly taken, and constitutes a part of the record.

The cause was tried upon the pleas of *nil debet* and *set-off.* The plea of set-off shows two causes of action, the one within the jurisdiction of a justice of the peace, and the other within the jurisdiction of the Circuit Court. The averment upon the small note, within the

*Byrd against* Tucker.

jurisdiction of a justice, was attempted to be supported by the production of the note. This evidence was withdrawn by the party producing it, without objection; and the averment in regard to the small note should then have been excluded from the plea. The case then went to trial upon the other part of the plea. This part of the plea of set-off states, that S. S. Sanger assigned, on the 12th day of December, 1840, to the plaintiff in error, a note which he held on the defendant. To this plea the defendant replied, that the note was assigned since the commencement of this suit, and issue taken thereon as to the date of the assignment. Upon the trial, the plaintiff in error offered the note and the assignment in evidence, which were rejected by the Court. The assignment is in these words: " Pay to W. J. Byrd, Dec. 12, 1840, Sept. 20, 1840. S. S. Sanger." The point now to be decided is, upon whom rested the burden of proof? The defendant in error pleaded affirmative matter negatively, and thereby took upon himself the *onus probandi*. It lay upon him to show that the note was assigned since the commencement of the suit? Has he done so? Certainly not. He has introduced no evidence upon the point. The production of the note established, *prima facie,* that the note was assigned prior, and not subsequent, to the commencement of the suit. The true date of the assignment corresponded with the plea of set-off, and the words " Sept. 20, 1840," were surplusage, and so should have been treated by the Court. Upon the production of the note, and the assignment, the proof of the plaintiff in error was complete, and conclusive of the issue; the defendant failing to produce any other or further proof contradicting the *prima facie* presumption. The judgment of the Circuit Court must therefore be reversed, with costs, the case remanded, and leave given the parties to amend their pleadings, if asked for.